UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIA MAXWELL, Individually, and as Next
Friend of T.D., a minor, and B.R., a minor.

       Plaintiffs,                         Case No. 08-11326

v.                                      Honorable Patrick J. Duggan

DARREN DODD; A. ROESKE; SMITH;
JOHN DOE, five unknown agents of the
United States Secret Service; UNITED
STATES OF AMERICA; STERLING
HEIGHTS POLICE DEPARTMENT; JAY
DONALDSON; ROGER GONGOS;
MATTHEW GUNNARSON; JAMES
KNIGHT; GREGORY LASKI; DANIEL
LANGHOR; and JOSEPH SVESKA,

       Defendants.
_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on April 21, 2010.

PRESENT:       THE HONORABLE PATRICK J. DUGGAN
                      U.S. DISTRICT COURT JUDGE

      This action arises from the arrest of Bryan Ross at the home of Kia Maxwell, T.D., and

B.R. (collectively "Plaintiffs") on October 18, 2007.   Plaintiffs allege that, while at their

home, the various defendants violated their civil rights.  The Court held a jury trial as to some

of the alleged claims from November 16 to November 19, 2009, and entered final judgment

on November 20, 2009, after the jury returned its verdict.  Presently before the Court are

various post-trial motions filed by Plaintiffs and some of the defendants.  The motions have been fully briefed and the Court dispensed with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

## I. Facts and Procedural Background

In the months leading up to the events that are the subject of this lawsuit, United States Secret Service Agent Darren Dodd had been investigating Bryan Ross as a suspected conspirator in the use of counterfeit money and checks.  By mid-October 2007, Dodd had obtained two arrest warrants based on information obtained through his investigation and surveillance of Ross.  On October 18, 2007, Dodd and a team comprised of  Secret Service Agents Jay Donaldson, Joseph Sveska, Roger Gongos, Matthew Gunnarson, James Knight, Gregory Laski, and Daniel Langhor and Sterling Heights Police Officers A. Roeske and Smith arrested Ross at the home of Kia Maxwell, Ross's girlfriend.  Other residents of the home included Ross's daughter, T.D.; the son of Ross and Maxwell, B.R.; and Maxwell's sister, Tyra Maxwell.

After Ross's arrest, Plaintiffs allege that the Secret Service agents conducted an unlawful search of their home without consent or a search warrant.  More specifically, Maxwell alleges that the agents held her at gunpoint, used racially derogatory language, and dragged her from room to room of the house while they conducted their search.  Maxwell was nine-months pregnant at the time and she further alleges that the agents refused to allow her to use the bathroom while they were present, causing Maxwell to urinate on herself. Before leaving the home, Plaintiffs allege that the agents unlawfully seized a shotgun, ammunition, and approximately $9600 in cash.  Meanwhile, the agents maintain that

Maxwell consented to the search of the home, willingly led them from room to room, and never urinated on herself. The agents deny taking any cash from the home but admit seizing the shotgun and ammunition as evidence of a felon-in-possession charge against Ross.

On March 27, 2008, Plaintiffs filed a seven-count complaint against Dodd, five unknown Secret Service agents, and the two officers of the Sterling Heights Police Department—Roeske and Smith. The complaint alleged violations of Plaintiffs' Fourth and Fourteenth Amendment rights in violation of 42 U.S.C.A. §§ 1983 and 1985(3) and the commission of various state torts. On September 16, 2008, the United States of America substituted in for Dodd in Counts II-VII of the complaint. After being briefed on a motion to dismiss, this Court issued an opinion and order on September 30, 2008, dismissing the claims against the United States and Dodd without prejudice. The claims against the United States were dismissed because Plaintiffs had not exhausted their administrative remedies as required by the Federal Tort Claims Act ("FTCA"), 28 U.S.C.A. § 2675.

On October 8, 2008, Plaintiffs filed, as of right, a seven-count amended complaint against Dodd, the five unknown Secret Service agents, Roeske, and Smith. On October 27, 2008, Plaintiffs stipulated to the dismissal of Roeske and Smith. Pursuant to another stipulation, Plaintiffs filed a two-count second amended complaint on January 19, 2009, naming Dodd, Donaldson, Gongos, Gunnarson, Knight, Laski, Langhor, and Sveska as defendants. On June 3, 2009, Plaintiffs stipulated to the dismissal of Donaldson and Sveska. On July 17, 2009, the remaining defendants filed a motion for summary judgment. The

Court granted the motion in part and denied it in part at a hearing on October 1, 2009.[1] On October 8, 2009, Plaintiffs stipulated to the dismissal of Langhor. On October 20, 2009, the United States, Dodd, Donaldson, Gongos, Gunnarson, Knight, and Laski filed motions for judgment alleging that the "judgment bar" of 28 U.S.C.A. § 2676 barred Plaintiffs from recovering at trial. The Court denied the motions in an opinion and order dated November 12, 2009.

The jury trial in this case began November 16, 2009. At trial, Plaintiffs pursued a Fourth Amendment *Bivens* claim against Dodd, Gongos, Gunnarson, Knight, and Laski and a civil rights conspiracy claim against Dodd and Knight.[2] At the close of all the proofs, the Court granted in part a motion for directed verdict by the defendants. The Court thereby dismissed all claims against defendant Gunnarson, all claims by plaintiff B.R., and all claims of a civil rights conspiracy. Before instructing the jury on the remaining claims, defense counsel entered on the record an objection to jury instructions that placed the burden of proof for exceptions to the search warrant requirement on defendants. The Court overruled defense counsel's objection.

Near the end of the second day of deliberations, the jury returned a unanimous verdict as to the remaining claims. The jury found that Dodd and Knight violated Maxwell's Fourth Amendment rights by searching her home without consent, unlawfully detaining her at the premises, and seizing her shotgun and ammunition. The jury awarded Maxwell $1000 in

---

[1] The Court's holding is reflected in an order filed on October 5, 2009.

[2] *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971), allows individuals to sue federal agents for alleged constitutional violations.

compensatory damages, $500 each from Dodd and Knight, and $2000 in punitive damages from Dodd. The jury found against T.D. as to all of her claims.

Presently pending before the Court are four separate post-trial motions: (1) a renewed motion for judgment as a matter of law or, in the alternative, for a new trial filed by Dodd and Knight; (2) a motion to correct, alter, or amend judgment filed by Dodd, Gongos, Gunnarson, Knight, Laski, and the United States; (3) a motion for a new trial as to damages only filed by Maxwell; and (4) a motion for costs and attorney fees filed by Maxwell. Through these motions, the parties raise several of the same and interrelated issues. Rather than separately address each of the motions, then, the Court will analyze the issues raised in turn.

## II. The Judgment Bar, 28 U.S.C.A. § 2676

In their post-trial motions, defendants again assert that Maxwell's recovery is barred by 28 U.S.C.A. § 2676. The Court previously rejected this argument in an opinion and order issued November 12, 2009. Acknowledging this, defendants argue that the Court erroneously concluded in the prior opinion and order that Plaintiffs made a strategic decision not to pursue claims against the United States to judgment. In support of their argument, defendants note that Plaintiffs opposed the United States's motion to dismiss for failure to exhaust administrative remedies, sued the Secret Service agents in their individual and *official* capacities in their second amended complaint, and filed a notice of appeal naming the United States as a defendant. None of these observations change the Court's prior reasoning.

Although constitutional rights violations by federal agents give rise to claims against both the United States and the individual agents, the judgment bar of 28 U.S.C.A. § 2676

prohibits a plaintiff from recovering on the latter claims once he or she pursues claims against the United States under the Federal Torts Claims Act ("FTCA") to judgment. *See Manning v. United States*, 546 F.3d 430, 434-35 (7th Cir. 2008). Even so, the statute allows a plaintiff to pursue claims against both the United States and the individual agents simultaneously without implicating the "judgment bar" so long as the plaintiff ultimately makes a strategic choice between the parallel remedies. (Nov. 12, 2009, Opinion and Order at 4-7 (citing relevant cases).) Given this understanding of the judgment bar, the Court concludes that 28 U.S.C.A. § 2676 is not implicated where a plaintiff's FTCA claims against the United States are dismissed without prejudice such that the plaintiff is entitled pursue those claims, if he or she so desires, in another forum.

Intentionally or not,[3] Plaintiffs temporarily pursued FTCA claims against the United States in this case. The conduct noted by defendants in their present motions, however, fails to establish that Plaintiffs pursued FTCA claims to judgment or that Plaintiffs failed to make strategic decisions regarding the available remedies so as to implicate the judgment bar. Even though Plaintiffs initially opposed dismissal of the United States on the state law tort claims for failure to exhaust administrative remedies under the FTCA, Plaintiffs made a voluntary, strategic decision after the United States's dismissal without prejudice not to pursue those claims further. (*See also* Nov. 12, 2009, Opinion and Order at 7 n.5 (discussing the "voluntariness" of Plaintiffs' actions).)

---

[3]As previously explained, the United States unilaterally substituted into the action in regard to the state tort claims filed against Dodd after Plaintiffs filed their original complaint. Plaintiffs never actually named the United States as a defendant.

Furthermore, to the extent that Plaintiffs may have asserted claims against the federal agents in their official capacities in the second amended complaint, dismissal of those *Bivens* claims on the basis of sovereign immunity would not result in a judgment for the United States under the FTCA as required to implicate the judgment bar. *See Fagan v. Luttrell*, No. 97-6333, 2000 WL 876775, *3 (6th Cir. June 22, 2000) (concluding that *Bivens* claims brought against government officials in their official capacities are barred by sovereign immunity); 28 U.S.C. § 2676 ("The judgment *in an action under section 1346(b)* of this title [the FTCA] shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim." (emphasis added).) The judgment bar imposes an election between FTCA and *Bivens* remedies, not an election between *Bivens* official capacity and individual capacity claims. *See Will v. Hallock*, 546 U.S. 345, 354, 126 S. Ct. 952, 960 (2006) ("If a *Bivens* action alone is brought, there will be no possibility of a judgment bar . . . .").

Finally, the Court is unaware of any reason why the filing of a notice of appeal by a plaintiff acting *pro se* should convert the Court's prior dismissal of the United States without prejudice as to the FTCA claims into a judgment that implicates 28 U.S.C.A. § 2676. For these reasons and all the reasons explained in this Court's November 12, 2009, opinion and order, the Court denies defendants motions to the extent they seek relief from judgment under 28 U.S.C.A. § 2676.[4]

---

[4]These arguments could otherwise be rejected as untimely attempts to obtain reconsideration of the Court's November 12, 2009, opinion and order. *See* Eastern District of Michigan Local Rule 7(h)(1).

### III. Judgment as a Matter of Law

Pursuant to Federal Rule of Civil Procedure 50, Dodd and Knight seek judgment as a matter of law on certain issues submitted to the jury. Judgment as a matter of law should be granted where "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party on [an] issue." Fed. R. Civ. P. 50(a)(1). In reviewing a motion for judgment as a matter of law, a court must view the evidence in the light most favorable to the non-moving party. *Denhof v. City of Grand Rapids*, 494 F.3d 534, 543 (6th Cir.2007).

### A. Seizure of Plaintiff's Shotgun

Dodd and Knight object to the jury's finding that they seized Maxwell's shotgun in violation of the Fourth Amendment. Specifically, Dodd and Knight argue that the finding of liability for the shotgun seizure is inconsistent with other jury findings. In this case, the jury filled out a special verdict form indicating their findings on various issues related to Maxwell's Fourth Amendment claim. (Renewed Mot. for J. as a Matter of Law Ex. 5.) Therein the jury concluded that the defendants did not violate Maxwell's Fourth Amendment rights by conducting a protective sweep of the residence in conjunction with Ross's arrest but did violate her rights by seizing the shotgun and ammunition.[5] (*Id.* at 1-2, 5.) Claiming that the shotgun was discovered during that protective sweep, Dodd and Knight argue that seizure of the shotgun was reasonable as a matter of law pursuant to the plain view doctrine.

Incident to an arrest, law enforcement officers may, "as a precautionary matter and

---

[5]Dodd and Knight do not seek judgment as a matter of law as to seizure of the ammunition. The verdict form did not require the jury to make separate findings as to the shotgun and ammunition.

without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Maryland v. Buie*, 494 U.S. 325, 334, 110 S. Ct. 1093, 1098 (1990). For the sweep to extend beyond the immediately adjoining area, "there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* In all circumstances, however, a protective sweep should last "no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises." *Id.* at 335-36, 110 S. Ct. at 1099. This is because a sweep is "aimed at protecting the arresting officers" and is "not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found." *Id.* at 335, 110 S. Ct. at 1099.

Meanwhile, the plain view doctrine allows law enforcement officers to seize evidence of criminal activity without a warrant when that evidence is in plain view. *See United States v. Garcia*, 496 F.3d 495, 508 (6th Cir. 2007). The plain view doctrine requires proof of four elements: "(1) the object must be in plain view; (2) the officer must be legally present in the place from which the object can be plainly seen; (3) the object's incriminating nature must be immediately apparent; and (4) the officer must have a right of access to the object." *Id.* The "immediately apparent" requirement demands that an officer "recognize the incriminating nature of an object as a result of his 'immediate' or 'instantaneous sensory perception.'" *Id.* at 511.

Given this legal framework, the jury's findings regarding the protective sweep and the

shotgun seizure are not necessarily inconsistent. During the protective sweep of the home, the agents contend that they checked under Maxwell's bed as a location that they reasonably believed could be harboring a dangerous individual. In so doing, Knight allegedly discovered a box, not a shotgun, with the word "Mossberg" on the side.[6] Recognizing "Mossberg" as the name of a gun manufacturer, Knight then "felt the box and determined there was weight in it."[7] (Renewed Mot. for J. as a Matter of Law at 5.)

Although the jury found that defendants were entitled to conduct a protective sweep of Maxwell's home, Knight's conduct appears to have gone beyond a mere cursory inspection of a place that a person could be found. Furthermore, Knight's manipulation of the box suggests that its incriminating nature was not immediately apparent or recognizable as a result of instantaneous sensory perception. And even with weight in the box, the actual contents thereof remained unknown until the box was opened. Therefore, the Court concludes that a reasonable jury could have found that Dodd and Knight unlawfully seized the shotgun.

To the extent Dodd and Knight seek qualified immunity for the seizure, their arguments assume that the shotgun was "discovered," as contemplated by the plain view doctrine, within the lawful scope of a protective sweep. For the reasons stated above, then, the motion for judgment as a matter of law is denied to the extent that Dodd and Knight seek judgment

---

[6]As an aside, the Court notes that it is typically dark under beds and it is unclear whether the word "Mossberg" would have been legible upon cursory inspection.

[7]These facts reflect the defendants' version of the protective sweep. The jury was not required to accept all of these facts at face value. For example, the jury saw pictures of Maxwell's bedroom and may have concluded, as a factual matter, that a person would not fit under the bed.

on Maxwell's shotgun seizure claim.

**B. Seizure of Maxwell during the Protective Sweep**

Next Dodd and Knight seek judgment as a matter of law as to Maxwell's claim that she was unlawfully seized during the protective sweep of the home. Dodd and Knight argue that, because the jury found that they justifiably conducted a protective sweep of the residence, Maxwell's temporary detainment during that sweep was necessarily lawful. The Court agrees with this basic analysis. There is no indication, however, that the jury assigned liability to Dodd and Knight for seizing Maxwell *during the protective sweep*.

As to Maxwell's unlawful custody claim, the Court instructed the jury that:

> A law enforcement officer may detain an occupant of a building during a lawful search of the building so long as the officer detains the person in a reasonable manner and does not detain the person any longer than the time it takes to complete the search. This authorization to detain an occupant of the building during execution of a search *applies to both protective sweep searches and to consent searches*.
> . . . .
> In order to prove her claim of being wrongfully detained in physical custody while at the residence, plaintiff Kia Maxwell must prove by a preponderance of the evidence that she was subjected to a seizure by defendants Dodd and Knight, that there was no justification for the seizure, and that she was detained in an unreasonable manner *or for a period of time after a protective sweep and/or consent search was completed*.

(Renewed Mot. for J. as a Matter of Law Ex. 3 (emphasis added).) These instructions clearly allowed the jurors to find for Maxwell only so long as there was some period of detainment not justified by the protective sweep or the consent search.

In deciding this claim, the jury was not asked to make independent findings regarding Maxwell's detainment during the protective sweep and consent search. In the special verdict form—submitted to the jury with approval of defense counsel—the jury was asked, "Did

11

either [Dodd or Knight] violate the Fourth Amendment constitutional rights of plaintiff Kia Maxwell by detaining her on the premises without just cause while they were present at the residence?" (Renewed Mot. for J. as a Matter of Law Ex. 5 at 4.) The jury answered "yes" as to both defendants. (*Id.*) By marking yes, the jury simply found that Dodd and Knight unlawfully detained Maxwell at some point during their presence at the residence, not necessarily during the protective sweep. Such a finding is entirely consistent with the jury's finding that Dodd and Knight searched Maxwell's residence without her consent. (*Id.* at 3.)

Nonetheless, Dodd and Knight assert that they need a ruling separating the two periods of Maxwell's detainment so that, on re-trial, detainment during the protective sweep is not re-submitted to the new jury. As discussed below, the Court is denying Dodd and Knight's motion for a new trial. Therefore, the Court also denies the motion for judgment as a matter of law on this issue.

## IV. Verdict against the Weight of Evidence

Combined with Dodd and Knight's motion for judgment as a matter of law is an alternative motion for a new trial. Under Federal Rule of Civil Procedure 59(a), a court may grant a new trial "after a jury trial[] for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). One such reason to grant a new trial exists "if a court determines that the verdict is clearly against the weight of the evidence." *Denhof*, 494 F.3d at 543. When a motion for new trial is based on a claim that the verdict is against the weight of the evidence, the verdict is not to be set aside simply because the court believes that another outcome is more justified. *Id.* "The court is to accept the jury's verdict 'if it is one which reasonably could have been reached.'" *Id.* (quoting

*Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir. 1967)).

Dodd and Knight seek a new trial on grounds that the jury verdict is against the weight of the evidence. In making this argument, Dodd and Knight contend that the testimony of the defendants was completely credible while the testimony of Maxwell and her sister was completely incredible. The Court disagrees. Even if Maxwell and her sister were not credible as to *everything*, a reasonable jury could have found credible their allegations that Dodd and Knight searched the home without obtaining consent. Under the circumstances, then, the Court would not be justified in setting aside the jury verdict as being against the weight of the evidence.

**V. Jury Instructions**

Dodd and Knight also seek a new trial on grounds that the Court erroneously instructed the jury as to the burden of proof for exceptions to the Fourth Amendment's warrant requirement. A motion for new trial based on erroneous jury instructions may be granted if the instructions, as a whole, were "misleading or [gave] an inadequate understanding of the law." *Nolan v. Memphis City Schools*, 589 F.3d 257, 264 (6th Cir. 2009) (quoting *Arban v. West Pub. Corp.*, 345 F.3d 390, 404 (6th Cir. 2003)).

As previously noted, defense counsel placed his objection to the Court's jury instructions on the record at trial and the Court overruled that objection. In their present motion, Dodd and Knight present no new arguments on this issue. Relying on case law from other circuits, Dodd and Knight assert that, in civil suits alleging Fourth Amendment violations, plaintiffs bear the burden of proving that law enforcement officers searched without a warrant and without the justification of an exception to the warrant requirement.

*See, e.g.*, *Valence v. Wisel*, 110 F.3d 1269, 1278-79 (7th Cir. 1997). In *Valence*, however, the Seventh Circuit acknowledged that "the Sixth Circuit concludes that defendants in a civil case must bear the burden of proving a voluntary consent to the search ostensibly because of the 'presumption against waiver of constitutional rights.'" *Id.* at 1278 (quoting *Tarter v. Raybuck*, 742 F.2d 977, 980 (6th Cir. 1984)). Dodd and Knight nonetheless contend that the Seventh Circuit was referring to mere dicta and that other Sixth Circuit cases addressing similar issues are unclear. The Court disagrees.

Beyond the "dicta" cited by the Seventh Circuit, other Sixth Circuit cases make it clear that the burden remains on law enforcement officers, even in civil cases, to prove that they acted pursuant to some exception to the warrant requirement where no warrant was obtained. In *Hardesty v. Hamburg Township* government agents entered a home without a warrant claiming they were justified because of the existence of "exigent circumstances." 461 F.3d 646, 654-55 (6th Cir. 2006). Even in this civil case, the Sixth Circuit stated, "The government bears the burden of proving that exigent circumstances such as a medical emergency existed to justify a warrantless search." *Id.* at 655. In another civil case, the Sixth Circuit considered the administrative search exception to the warrant requirement and also concluded, "the burden of proof rests with the party asserting the exception." *Allinder v. State of Ohio*, 808 F.2d 1180, 1187 (6th Cir. 1987). Although neither of these cases specifically involved the consent exception to the warrant requirement, the Court has no reason to believe that the Sixth Circuit would treat the consent exception differently than others. Therefore, the jury was properly instructed that defendants had the burden of proof as to the consent exception and a new trial on this ground is unnecessary.

## VI. Compromise Verdict/Insufficient Damages

Next, all affected parties seek, to some extent, a new trial based on the limited amount of damages awarded by the jury. Dodd and Knight seek a new trial on grounds that the limited damages reflect an impermissible compromise verdict by the jury. Maxwell agrees that the damage award is insufficient claims but disputes that the verdict reflects an impermissible compromise and instead seeks a new trial as to damages only. The Court first addresses Dodd and Knight's argument.

As described by the Tenth Circuit, "A compromise judgment is one reached when the jury, unable to agree on liability, compromises that disagreement and enters a low award of damages." *Nat'l R.R. Passenger Corp. v. Koch Indus., Inc.*, 701 F.2d 108, 110 (10th Cir. 1983). In determining whether a compromise verdict has been reached, "a grossly inadequate award of damages by itself does not require retrying the liability issue." *Id.* The Court should also consider whether the damages award "awards only nominal damages, disregards uncontested and obvious damages, or awards a party only its out-of-pocket losses." *Id.* (omitting internal citations.) Other factors for consideration may include whether there was a close question of liability and the length of jury deliberation. *Id.* Ultimately, though, before granting a new trial on this basis, "the overarching consideration must be whether the record, viewed in its entirety, clearly demonstrates the compromise nature of the verdict." *Boesing v. Spiess*, 540 F.3d 886, 889 (8th Cir. 2008).

Dodd and Knight assert that the record clearly demonstrates a compromise verdict in this case. In support, Dodd and Knight note that the issue of liability was strongly contested, that the damages award is low in comparison to plaintiff's counsel's request for $75,000 in

compensatory damages, and that the jury deliberated for almost two full days before reaching a verdict. Dodd and Knight also find significance in a jury note sent near the end of the first day of deliberations indicating that the jurors believed they were hung. Dodd and Knight presume that the note reflected disagreement between the jurors as to liability. After being encouraged to continue their deliberations and being informed that they could reach a 7-1 verdict rather than a unanimous one, the jurors returned with a unanimous verdict the next day.

The Court disagrees with Dodd and Knight that this record reflects an impermissible compromise verdict. Although plaintiff's counsel requested $75,000 in compensatory damages during his closing arguments, that request was based on little more than counsel's subjective valuation of the psychological and emotional damages suffered by Maxwell. The jury may have simply disagreed with that subjective valuation. And while the existence of consent for the search was the primary issue at trial, the Court also remains unconvinced that the jury's delay in reaching a verdict necessarily reflected disagreement as to the liability issue.[8] With limited evidence on damages, the delay could equally have been caused by a struggle to reach a consensus on the appropriate numerical value for the damages award. Furthermore, had there truly been disagreement as to liability, the Court would have expected the jury to take advantage of its option to return a less than unanimous verdict. The jury, however, returned a unanimous verdict that each juror confirmed on the record. As such, the Court does not believe that the jury reached an impermissible compromise verdict and Dodd

---

[8]The Court does not consider less than two days of deliberations particularly unusual or lengthy.

and Knight's motion for new trial is denied.

Although the Court concludes that the record fails to clearly demonstrate the existence of a compromise verdict, a grossly inadequate damages award may present grounds for a new trial as to damages only. *See Spero-Nelson v. Brown*, 175 F.2d 86, 89 (6th Cir. 1949). Even so, "[t]he scope of review of a damage award is extremely narrow." *Walker v. Bain*, 257 F.3d 660, 674 (6th Cir. 2001). The Court may grant Maxwell her requested relief only if "the evidence indicates that the jury awarded damages in an amount substantially less than unquestionably proved by the plaintiff's uncontradicted and undisputed evidence." *Id.*

As discussed above, the trial record includes minimal evidence of exact damages suffered by Maxwell.[9] For example, while Maxwell testified that she sought counseling to deal with the trauma related to defendants' conduct,[10] she produced no receipts in support of that claim.[11] For the most part, then, the jury was asked to place a subjective value on the psychological and emotional suffering that defendants' conduct would have caused. With the value of Maxwell's damages left largely to the discretion of the jury, the Court cannot conclude "that the jury awarded damages in an amount substantially less than unquestionably proved by the plaintiff's uncontradicted and undisputed evidence." Therefore, Maxwell's motion for a new trial as to damages only is denied.

## VII. Amended Judgment and Costs for Prevailing Parties

---

[9]Of course, Maxwell was not required to produce such exact evidence, especially in regard to damages that are not easily quantifiable.

[10]Maxwell also testified that she stopped going to counseling because she did not find it helpful.

[11]The only receipt presented by Maxwell was for the seized shotgun.

Even if the jury verdict in this case is to stand, defendants remain dissatisfied with the contents of the judgment entered on the record on November 19, 2009. Dodd, Gongos, Gunnarson, Knight, and Laski seek and amended judgment reflecting the complete disposition of the claims in this case.[12] Specifically, they request that the Court add language to the judgment to reflect the dismissal of all claims by B.R., the dismissal of all claims against Gunnarson, and the jury verdict in favor of Gongos and Laski as to Maxwell's claims. Furthermore, Dodd and Knight seek an award of costs from B.R. and T.D. while Gongos, Gunnarson, and Laski seek their costs from Maxwell, B.R., and T.D. Plaintiffs do not oppose an amendment to the judgment to reflect the complete disposition of all the claims but argue that cost awards to any of the defendants would be inappropriate. In a separate motion, Maxwell requests that the Court enter an award of costs in her favor against Dodd and Knight.

In light of the agreement between the parties, the Court will enter an amended judgment reflecting the disposition of B.R.'s claims, the claims against Gunnarson, and the jury verdict for Gongos and Laski as to Maxwell's claims. This leaves only this issue of costs. Federal Rule of Civil Procedure 54 provides, "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). As the contents of the rule indicate, an award of costs against the losing party "is the normal rule obtaining in civil litigation." *Whitfield v. Scully*, 241 F.3d 264, 270 (6th Cir. 2001). Nonetheless, by including the exception for court orders

---

[12]The United States joined the other named defendants in seeking an amended judgment. As discussed in Section II, *supra*, however, the United States's request for relief is denied.

providing otherwise, the rule "generally grants a federal court discretion to refuse to tax costs in favor of the prevailing party." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 442, 107 S. Ct. 2494, 2497 (1987). Because a denial of costs is an exception to the normal rule, "a district court must articulate its reasons for doing so." *Whitfield*, 241 F.3d at 270.

Having considered the arguments of the parties, the Court concludes that this is an appropriate case in which to deny costs to all prevailing parties. As an initial matter, the Court believes that this has been a difficult case which the parties have pursued and defended in good faith. *See Knology, Inc. v. Insight Communications Co., L.P.*, 460 F.3d 722, 726-27 (6th Cir. 2006) (listing difficulty and good faith as factors to be considered in denying costs). Under these circumstances, it is not surprising to the Court that there exist prevailing parties on both sides of the "v:" Maxwell prevailed against Dodd and Knight; Dodd and Knight prevailed against T.D. and B.R.; and Gongos, Gunnarson, and Laski prevailed against Maxwell, T.D., and B.R. The mixed result makes it difficult to sort out appropriate cost awards. Further complicating the issue is the fact that the costs of Maxwell in pursuing this action are the same costs expended by T.D. and B.R. such that, if Maxwell recovers her costs, T.D. and B.R. necessarily recover theirs as well. And the same can be said of defendants' costs. Given the mixed result, the identical costs among co-parties, the difficulty of the case, and the good faith of the parties, the Court declines to attempt an apportionment of costs and liability for costs and instead orders that the parties bear their own litigation expenses. The amended judgment will reflect this decision.

## VIII. Attorney Fees for Maxwell

In addition to requesting an award of costs, Maxwell requests an award of attorney fees.

Analyzing her *Bivens* action to a 42 U.S.C.A. § 1983 civil rights action against state officials, Maxwell argues that she should be able to recover her attorney fees from Dodd and Knight. Where a plaintiff prevails in a § 1983 action against state officials, 42 U.S.C.A. § 1988 authorizes recovery of reasonable attorney fees against the state officials. 42 U.S.C.A. § 1988(b). Similarly, 28 U.S.C.A. § 2412 authorizes prevailing parties to recover from the United States "reasonable fees and expenses of attorneys . . . in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity . . . ." 28 U.S.C.A. § 2412(b). Unfortunately for Maxwell, neither of these statutes applies directly to the present case.

Because she sued federal agents for conduct taken in the agents' individual capacities, Maxwell's claims in this case arise under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971). The attorney fee provision of 42 U.S.C.A. § 1988, however, applies only to actions arising under certain statutes enumerated therein. *Hall v. United States*, 773 F.2d 703, 707 (6th Cir. 1985) ("[T]he federal government is not liable for attorney fees under section 1988 for pure *Bivens* actions. The federal government must violate one of the sections enumerated in section 1988 to be liable for attorney fees under that section."). Meanwhile 28 U.S.C.A. § 2412 allows recovery from the United States in cases against the United States or United States agents acting in their official capacities. A *Bivens* action fails to present such claims. *Kreines v. United States*, 33 F.3d 1105, 1109 (9th Cir. 1994) ("[The statute] does not authorize the courts to award attorney's fees against the United States in *Bivens* actions. Federal agents are sued in their individual capacities rather than their official capacities in *Bivens* actions . . . .").

20

Apparently acknowledging the lack of statutory authority for an award of attorney fees in this case, Maxwell requests that the Court exercise its common law powers to award her the requested relief. (Mot. for Costs & Atty Fees at 6 (quoting *Bush v. Lucas*, 462 U.S. 367, 374-78, 103 S. Ct. 2404, 2409-11 (1983).) Maxwell also notes that, in cases denying attorney fees to *Bivens* plaintiffs, the plaintiffs have typically sought attorney fees from the United States rather than the defendants sued in their individual capacities. *See Hall*, 773 F.2d at 704; *Kreines*, 33 F.3d at 1107. In opposition, Dodd and Knight assert that the Court should apply the "American Rule" under which courts adhere "to a general practice of not awarding fees to a prevailing party absent explicit statutory authority." *Key Tronic Corp. v. United States*, 511 U.S. 809, 819, 114 S. Ct. 1960, 1967 (1994).

Rule 54 of the Federal Rules of Civil Procedure requires that a party requesting attorney fees specify "the statute, rule, or other grounds entitling the movant to the award." Fed. R. Civ. P. 54(d)(2)(B)(ii). As discussed in detail above, there is no statute or rule authorizing an award of attorney fees in this case. Maxwell does, however, present some additional policy arguments in support of her motion. Nonetheless, given the "general practice of not awarding attorney fees to a prevailing party absent explicit statutory authority," the Court denies Maxwell's motion for attorney fees.[13] *See Unus v. Kane*, 565 F.3d 103, 113, 126 (4th Cir. 2009) ("[A]ttorney's fees are not available in a *Bivens* action . . . ."); *Nurse v. United States*, 226 F.3d 996, 1004 (9th Cir. 2000) ("[A]ppellant has not justified her prayer for

---

[13]To the extent that attorney fee awards may be justified as sanctions for poor conduct, the Court notes that no such award is appropriate in this case. As previously observed, the Court believes that the parties pursued and defended this action in good faith.

attorney's fees relating to her *Bivens* claims under any statutory or contractual provision or any judicially-created doctrine. It therefore does not appear at present that appellant will be eligible for fees at the conclusion of this litigation.").

## IX. Conclusion

Because the parties agree that entry of an amended judgment is appropriate in this case, the Court will grant that relief. As to all other issues, the four pending post-trial motions are denied for the reasons set forth above.

Accordingly,

**IT IS ORDERED** that the Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial filed by Dodd and Knight is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion to Correct, Alter, or Amend Judgment filed by Dodd, Gongos, Gunnarson, Knight, Laski, and the United States is **GRANTED IN PART** such that the Court will enter an amended judgment reflecting the dismissal of all claims by Plaintiff B.R., the dismissal of all claims against Defendant Gunnarson, and the jury verdict in favor of Defendants Gongos and Laski. **IT IS FURTHER ORDERED** that the same motion is **DENIED IN PART** as to all other relief requested.

**IT IS FURTHER ORDERED** that the Motion for a New Trial for Damages Only filed by Maxwell is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion for Costs and Attorney Fees filed by Maxwell is **DENIED**.

A judgment consistent with this order shall issue.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Rex A. Burgess, Esq.
Heidi T. Sharp, Esq.
Heidi J. Junttila, Esq.
William L. Woodward, Esq.